IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JOE M. BOWSER, JR.,
      Petitioner,

vs.                          Case No. 5:08cv227/RS/EMT

WALTER McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 17). Petitioner filed a reply (Doc. 22).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* Doc. 17, Exhibits).[1] On November 29, 1990, Petitioner was indicted in the Circuit Court in and for Bay County, Florida, for first degree murder with a firearm and attempted robbery with a firearm (Ex. A at 9–10). Following a jury trial, he was convicted of second degree murder

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 17).

and acquitted of the attempted robbery charge (*id.* at 273). He was sentenced to twenty (20) years of imprisonment, with a three-year mandatory minimum term for use of a firearm, followed by a period of twenty (20) years of probation, with pre-sentence jail credit of 453 days (*id.* at 306–11).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"). On June 23, 1994, the First DCA affirmed the conviction but vacated the three-year mandatory minimum term and remanded the case for resentencing (Ex. A at 372–75). Bowser v. State, 638 So. 2d 1042 (Fla. 1st DCA 1994).

On August 29, 1994, Petitioner was resentenced to twenty (20) years of imprisonment, followed by a period of twenty (20) years of probation, with pre-sentence jail credit of 453 days (Ex. A at 382–86, 881–90). Petitioner, through counsel, again appealed the judgment to the First DCA. On April 3, 1995, the First DCA affirmed per curiam without written opinion, with the mandate issuing April 19, 1995 (*id.* at 414). Bowser v. State, 652 So. 2d 819 (Fla. 1st DCA 1995) (Table).

Petitioner filed several motions for post-conviction relief, which were denied by the state circuit court (Ex. A at 416–40, 454–58, 646–69).[2] Petitioner appealed only the denial of his Rule 3.850 motion, which was affirmed per curiam without written opinion (*id.* at 482–83). Bowser v. State, 718 So. 2d 174 (Fla. 1st DCA 1998) (Table).

Petitioner was released from incarceration to serve his term of probation in January of 2000 (*see* Doc. 1 at 8; Doc. 17 at 3, Ex. A at 962). On January 29, 2002, a violation of probation ("VOP") affidavit was sworn alleging Petitioner violated a condition of his probation (Condition 5) by committing five new law violations (Ex. A at 635).[3] Following a VOP hearing on April 22, 2002, at which Petitioner was represented by counsel, the court found that Petitioner violated condition 5 (*id.* at 1102–37). The court revoked Petitioner's probation and sentenced him to twenty-seven (27) years of imprisonment, followed by thirteen (13) years of probation, with pre-sentence credit of 418

---

[2] Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure, on May 25, 1995, which was denied by the state circuit court on August 21, 1995 (Ex. A at 416–22). He filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure on July 16, 1996, which was denied by the state circuit court on February 16, 1998 (*id.* at 423–40, 467–68). Petitioner filed a Motion to Define or Clarify Sentence on June 15, 1997, which was denied by the state circuit court on July 2, 1997 (*id.* at 454–58).

[3] Petitioner was previously charged with violating his probation; however, the state circuit court dismissed the charge, at the State's request, on April 26, 2001 (Ex. A at 488–630).

days (*id.* at 653–61). Petitioner, through counsel, appealed the decision to the First DCA. The First DCA affirmed per curiam without written opinion on July 9, 2003, with the mandate issuing July 25, 2003 (*id.* at 725–26). <u>Bowser v. State</u>, 849 So. 2d 298 (Fla. 1st DCA 2003) (Table).

On March 10, 2004, Petitioner filed a Rule 3.850 motion challenging the VOP (Ex. A at 727–812). The state circuit court appointed counsel for Petitioner (*id.* at 944). The court held an evidentiary hearing on June 27, 2006, and subsequently denied Petitioner's Rule 3.850 motion (*id.* at 961–65, 972–97). Petitioner appealed the decision to the First DCA (Ex. F). On February 19, 2008, the First DCA affirmed per curiam without written opinion, with the mandate issuing March 18, 2008 (Ex. I, J). <u>Bowser v. State</u>, 975 So. 2d 1135 (Fla. 1st DCA 2008) (Table).

Petitioner filed the instant federal habeas action on July 18, 2008 (Doc. 1 at 6). Respondent concedes that the petition is timely (Doc. 17 at 6).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), overruled on other grounds by Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

---

[4] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving

---

[5]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which

---

judgment of a State court shall not be granted unless it appears that–
    (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i) there is an absence of available State corrective process; or
       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

"the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

---

[6] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[7]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally

---

[7] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[8]  Second, the state

---

[8] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "Trial court don't [sic] have jurisdiction to revoke probation on void probation order."

Petitioner contends the trial court lacked jurisdiction to revoke his probation because the revocation was based upon a "void" probation order (Doc. 1 at 4). He contends the trial court revoked his probation based upon a violation of Condition 5 set forth in the probation order issued

February 13, 1992;[9] however, that probation order was rendered invalid in 1994 when he was resentenced (*id.* at 8–9). Petitioner states the resentencing court did not enter a new probation order or orally announce conditions of probation at the resentencing hearing (*id.*). Therefore, the court had no jurisdiction to revoke his probation in 2002 (*id.*). Petitioner contends the court's revoking his probation in the absence of jurisdiction to do so violated his due process rights guaranteed by the Fourteenth Amendment (*id.* at 9).

Respondent contends Petitioner failed to exhaust this claim, because he did not alert the state courts to the federal nature of his claim (Doc. 17 at 8–9). Respondent contends Petitioner made a "passing mention" to the Fourteenth Amendment and due process in his Rule 3.850 motion, but he cited no Supreme Court decisions to support his claim and relied exclusively upon state cases interpreting state law (*id.* at 8). Respondent further contends even if Petitioner is deemed to have alerted the state courts that he was raising a federal claim, the issue actually involves only state law (*id.* at 9–11). Respondent argues federal courts may not review the state court's determination on state law questions (*id.*). Finally, even if this court deemed the claim exhausted, Petitioner has failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established Supreme Court law. Therefore, Petitioner is not entitled to habeas relief (*id.* at 11–12).

In Petitioner's reply brief, he asserts an additional due process argument, that the trial court's failure to issue a new probation order or orally pronounce the conditions of probation at resentencing deprived him of actual notice of the conditions of probation (Doc. 22 at 2–3). Petitioner contends the trial court was aware at the VOP hearing that a new probation order had not been entered upon resentencing; therefore, the court could not find that he knowingly and willfully violated Condition 5 (*id.* at 3).

Upon review of the state court record, the undersigned concludes that Petitioner sufficiently alerted the state courts to the federal nature of his claim. In addition to citing the Fourteenth Amendment in his Rule 3.850 motion, Petitioner argued the trial court violated federal due process

---

[9] Condition 5 provided, "You will live and remain at liberty without violating the law. A conviction in a court of law shall not be necessary in order for such a violation to constitute a violation of your Probation." (Ex. A at 310).

principles by revoking his probation without jurisdiction to do so (Ex. A at 731–41). Furthermore, Petitioner's post-conviction counsel argued at the evidentiary hearing that Petitioner did not receive notice of the conditions of his probation due to the trial court's failure to reduce the conditions to writing upon resentencing him in August of 1994 (*id.* at 996). Additionally, counsel for the State acknowledged at the evidentiary hearing that Petitioner was raising a due process challenge to the revocation (*id.* at 992–95). Finally, Petitioner argued a federal due process violation in his initial brief on appeal of the state circuit court's denial of his claim (*see* Ex. F at 8). Therefore, Petitioner alerted the state courts to the federal nature of his claim.

      1.      Clearly Established Federal Law

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." Black v. Romano, 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) (citing Bearden v. Georgia, 461 U.S. 660, 666, and n. 7, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)). Where, as here, the decision to revoke probation lies in the discretion of the court, the "probationer must be given the opportunity to show not only that he did not violate the conditions, but that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." Romano, 471 U.S. at 612. Revocation of probation passes constitutional muster under the substantive component of the Due Process Clause as long as the revocation is not "totally devoid of evidentiary support." *See* Douglas v. Buder, 412 U.S. 430, 432, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973); *see also* Romano, 471 U.S. at 615–16 ("The decision to revoke Romano's probation satisfied the requirements of due process. . . . The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation.").

In the instant case, Petitioner does not assert a procedural due process violation (for example, that he did not receive adequate notice of the violation or an opportunity to be heard); instead, he argues a substantive due process violation, that is, (1) the court lacked jurisdiction to revoke his probation because a valid probation order was not in place, and (2) he did not knowingly and willfully violate his probation because he did not receive actual notice of the conditions of his probation.

      2.      Federal Review of State Court Decision

In the state circuit court's written decision denying Petitioner's Rule 3.850 motion, the court addressed both the jurisdictional and notice aspects of Petitioner's due process claim.  As to the jurisdictional argument, the post-conviction court found that the trial court issued a valid, written probation order on February 13, 1992, when Petitioner was originally sentenced upon his conviction for second degree murder (Ex. A at 961, 963).  The court found that the remand from the First DCA, upon Petitioner's appeal of his conviction and sentence, merely vacated the three year mandatory minimum term that the sentencing court erroneously imposed; therefore, the resentencing in August of 1994 merely reimposed the original sentence but without the three year mandatory minimum (*id.* at 963–64).  The court found that the resentencing court's failure to enter a new written probation order did not mean that Petitioner was not on probation (*id.* at 964).  The court additionally found that under Florida law, the basic statutory terms of probation, such as living at liberty without violating the law, do not need to be orally stated on the record at the time Petitioner was placed on probation (*id.*).

With regard to Petitioner's "actual notice" argument, the post-conviction court found that Petitioner had knowledge of the probation order issued on February 13, 1992 (*id.* at 963).  The court found that the resentencing court's failure to enter a new written probation order did not mean that Petitioner was unaware of the fact that he was on probation (*id.* at 964).  The court found that the history of Petitioner's supervision prior to the final VOP hearing reflected that he was aware he was on probation at the time of the violation, and he was aware that a new law violation could constitute a violation of his probation (*id.*).  This history included the fact that Petitioner was released on probation on January 3, 2000, and was supervised on probation until his arrest on new law violations in October of 2000 (*id.* at 962).  The court found that on October 5, 2000, an affidavit for VOP was filed alleging new law violations of trafficking in cocaine, possession of paraphernalia, and escape, which occurred on October 4, 2000 (*id.*).  The court found that Petitioner was arrested on this first VOP on October 30, 2000, but the State dismissed the new law violations; therefore, on April 26, 2001, the court entered an order dismissing the VOP affidavit and restoring Petitioner to supervision (*id.* at 962, 964).  The post-conviction court noted that at that time, Petitioner raised no issue as to the alleged lack of a written probation order (*id.* at 962).  The court further found that Petitioner remained on supervision until his arrest on January 23, 2002, for new law violations, which formed

the basis for the VOP at issue (*id.*). The state circuit court concluded that Petitioner failed to show a valid basis for challenging the revocation on the ground that a new written probation order was not issued following the resentencing hearing in 1994 (*id.* at 963–64).

Initially, Petitioner is not entitled to relief on the jurisdictional aspect of his due process claim. His arguement that the absence of a written probation order (or an oral pronouncement of the conditions of probation) upon resentencing deprived the state court of jurisdiction to revoke his probation presents purely an issue of state law. The state court's determination that the original written order of probation was still valid even after Petitioner's resentencing was a determination of state law. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Therefore, this court must defer to the state court's determination that a valid probation order was in effect at the time Petitioner committed the new law violations in 2002, which was the basis for the revocation. In light of this determination, Petitioner's due process claim fails to the extent it is based upon his jurisdictional argument.

Additionally, Petitioner has failed to demonstrate he is entitled to relief on the "actual notice" aspect of his due process claim. Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings that: (1) he had knowledge of the probation order issued on February 13, 1992 (which included the condition that he "live and remain at liberty without violating the law" (*see* Ex. A at 310)); (2) he was released from incarceration to probation in 2000 and remained on supervision until his arrest on January 23, 2002, for the new law violations; (3) he knew he was on probation when he committed the new law violations in 2002; and (4) he knew and understood that refraining from violating any laws was a standard condition of his probation. During the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner did not present any evidence that he was not actually aware he was on probation in January of 2002, when the violation occurred, or that he was not actually aware that violating the law constituted grounds for revoking his probation; instead, he simply relied on the undisputed fact that the resentencing court did not

issue a new probation order or orally advise him of the conditions of his probation in 1994 (*see* Ex. A at 972–97).[10]  Petitioner's assertion in his reply brief that he was not "on actual notice" of the conditions of his probation does not constitute clear and convincing evidence that he actually did not know or understand that he was on probation in January of 2002, and that his probation could be revoked if he violated the law.

Furthermore, Petitioner's contention that Respondent failed to produce evidence indicating that he had knowledge of the conditions of his probation and showing that he willfully violated those conditions is unavailing (*see* Doc. 22 at 2–3).  Under § 2254, it is Petitioner's burden, not the State's, to rebut the state court's findings by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Moreover, it is Petitioner's burden to demonstrate that the state court's adjudication of his claim resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.  *See* 28 U.S.C. § 2254(d)(1). Petitioner has not carried his burden on either count.  In light of the state court's findings that Petitioner knew he was on probation and knew that refraining from any violations of the law was a condition of his probation, and the absence of any evidence to the contrary, Petitioner has failed to establish that the state court's adjudication of his due process claim was based on an unreasonable determination of the facts in light the evidence presented to the state court, or that the state court's adjudication of his claim was contrary to or an unreasonable application of Supreme Court law.

Based upon the above discussion, Petitioner has failed to show he is entitled to federal habeas relief on either aspect of his due process claim.

B.    Ground Two:  "Ineffective assistance of trial counsel failure [sic] to preserve issues for appellate review by objecting."

Petitioner contends his trial counsel was ineffective for failing to investigate the validity of the probation order issued February 13, 1992 (Doc. 1 at 4, 11–12).  He further contends counsel was deficient for failing to take the following actions on the ground that the 1992 probation order was "null and void":  (1) challenge the validity of the charging document, (2) object to the order of revocation, (3) object to imposition of the VOP sentence, and (4) preserve the issue for appeal (*id.*).

---

[10] The state court record confirms that Petitioner was present at the resentencing hearing on August 29, 1994, when the court sentenced him to the Department of Corrections "to be imprisoned for a term of twenty years followed by a period of probation for twenty years." (Ex. A at 881–85).

Respondent contends Petitioner failed to exhaust this claim (Doc. 17 at 12–13). Respondent concedes that Petitioner raised this ineffective assistance of counsel claim in his Rule 3.850 motion; however, he did not raise it in his initial brief on appeal of the state circuit court's order denying relief (*id.*). Therefore, the claim is procedurally barred from federal review (*id.*). Respondent additionally contends even if Petitioner exhausted the claim, he is not entitled to relief because he has failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of federal law (*id.* at 13–15).

The state court record conclusively establishes that Petitioner failed to exhaust Ground Two because he failed to raise it on appeal of the state circuit court's denial his Rule 3.850 motion. Where, as here, Petitioner received an evidentiary hearing on his Rule 3.850 motion, he was required to file an appellate brief in appealing the trial court's denial of the motion. *See* Fla. R. App. P. 9.141(b)(3). Petitioner filed a brief, but he did not argue the ineffective assistance of counsel issues raised in Ground Two (*see* Ex. F). This constituted a waiver of the issues in the state court. *See, e.g.,* Sweet v. State, 810 So. 2d 854, 870 (Fla. 2002) (holding that claims raised on appeal from order denying post-conviction relief were procedurally barred where petitioner received an evidentiary hearing on his Rule 3.850 motion and failed to fully brief claims on appeal); Shere v. State, 742 So. 2d 215, 224 n.6 (Fla. 1999) ("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); Duest v. Dugger, 555 So. 2d 849, 851 (Fla. 1990) (holding that issues raised on appeal from order denying post-conviction relief were procedurally barred where petitioner received an evidentiary hearing on his Rule 3.850 motion and failed to fully brief and argue the points on appeal; petitioner's merely making reference to arguments below without further elucidation did not suffice to preserve issues, and those claims were deemed to have been waived). Therefore, Ground Two is procedurally defaulted. *See* Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006) (holding that petitioner, who had received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his right-to-testify claim when he failed to argue it in his initial brief on appeal from the denial order; raising it in his reply brief was not proper exhaustion); *see also* Cortes v. Gladish, 216 Fed. Appx.

897, 899–900 (11th Cir. 2007) (stating that had the petitioner received an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those issues, and they would be considered procedurally defaulted).

Petitioner has failed to show cause for his failure to argue Ground Two in his initial brief on appeal. Furthermore, Petitioner has not shown that he is entitled to application of the fundamental miscarriage exception to the procedural bar. Therefore, Ground Two is unexhausted in the state courts and procedurally barred from federal review.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 23<u>rd</u> day of February 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).